# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

ROBERT A. ESPINOZA,　　　　)
　　　　　　　　　　　　　　)
　　　　Petitioner,　　　　　)
　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　)　　　Case No.　16-cv-4145
　　　　　　　　　　　　　　)
UNITED STATES OF AMERICA,　)
　　　　　　　　　　　　　　)
　　　　Respondent.　　　　　)

## MEMORANDUM ORDER & OPINION

This matter is before the Court on a Motion (Doc. 1) and an Amended Motion (Doc. 8) Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By A Person in Federal Custody filed by Robert A. Espinoza. The motions have been fully briefed. For the reasons stated below, the motions are DENIED.

### BACKGROUND

On May 18, 2001, Robert A. Espinoza and four other members of the Quad City Bishops ("QC Bishops") were indicted in connection with ten counts of racketeering-related crimes. A jury convicted Espinoza on November 6, 2001, of racketeering activities in violation of 18 U.S.C. § 1962(c), conspiracy to commit racketeering activities in violation of 18 U.S.C. § 1962(d), conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846, unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2), and using and carrying a destructive device during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c) and 2. *United States v. Espinoza*, No. 00-cr-40031 (C.D. Ill. 2001). Petitioner was sentenced to 240 months for the first two offenses, 60 months for the third offense,

120 months for the fourth offense to run concurrently, and 360 months for the fifth

offense to run consecutively. Judgment was entered in this case on March 6, 2002.

Espinoza appealed his conviction, raising two issues: (1) whether there was

sufficient evidence that the QC Bishops engaged in, or their activities affected,

interstate commerce; and (2) whether the district court abused its discretion when it

denied Espinoza's motion for a mistrial. *U.S. v. Espinoza*, 52 F.App'x 846 (7th Cir.

2002). The Seventh Circuit rejected both of these arguments, and affirmed Espinoza's

convictions and sentence. *Id.*

On April 29, 2004, Espinoza filed his first § 2255 petition, but it was dismissed

on July 14, 2004, for failure to prosecute. *Espinoza v. U.S.*, No. 11-4023, 2011 WL

1827232 (C.D. Ill. May 12, 2011). On August 17, 2004, the Court allowed Espinoza to

reopen his case, and on September 10, 2004, Espinoza reurged his first § 2255 petition

arguing ineffective assistance of counsel. On December 19, 2006, this Court denied

Espinoza's § 2255 petition, and the Seventh Circuit denied Espinoza's application for

certificate of appealability on August 3, 2007.

On March 25, 2011, Espinoza filed a Petition for Extraordinary Relief in the

Nature of Audita Querela, Mandamus, Coram Nobis, Coram Vobis, Prohibition,

Habeas Corpus, and/or Injunctive or any other Extraordinary Relief Pursuant to 28

U.S.C. § 1681. *Espinoza v. U.S.*, No. 11-4023, 2011 WL 1827232 (C.D. Ill. May 12,

2011). The District Court construed that motion as a successive motion to vacate, set

aside, or correct sentence and dismissed Espinoza's petition for lack of jurisdiction.

*Id.*

On July 27, 2016, the Seventh Circuit granted Espinoza's application to file a

successive motion to vacate under § 2255, holding that Espinoza had made a prima facie showing that his § 924(c) conviction may be incompatible with *Samuel Johnson v. United States*, 135 S.Ct. 2551 (2015), made retroactive by *Welch v. United States*, 136 S.Ct. 1257 (2016).

Thus, on July 27, 2016, Espinoza filed the instant successive § 2255 motion, (Doc. 1), and on October 13, 2016, Espinoza's court-appointed counsel filed an amended § 2255 motion. (Doc. 8). Espinoza argues that his conviction and sentence on the last count—using and carrying a destructive device during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)—should be vacated pursuant to *Samuel Johnson*. The Government has filed its response and Petitioner filed a reply. Thus, this matter is ripe for decision.

## LEGAL STANDARDS

Section 2255 of Title 28 of the United States Code provides that a sentence may be vacated, set aside, or corrected "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." "Relief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Thus, § 2255 relief is limited to correcting errors of constitutional or jurisdictional magnitude or errors constituting fundamental defects that result in complete miscarriages of justice. *E.g.*, *Kelly v. United States*, 29 F.3d 1107, 1112 (7th

3

Cir. 1994), *overruled on other grounds by United States v. Ceballos*, 26 F.3d 717 (7th Cir. 1994). "A § 2255 motion is not a substitute for a direct appeal." *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir. 2003) (citing *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995)).

Generally, a 2255 motion must be filed within one year of the date the judgment against the petitioner became final. 28 U.S.C. § 2255(f)(1); *Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court... denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). However, § 2255(f)(3) provides that a 2255 motion may be timely if it is brought within one year of the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. 28 U.S.C. § 2255(f)(3).

A petitioner may not generally pursue a claim on collateral review that he failed to raise on direct appeal unless he demonstrates cause and prejudice or that he is actually innocent. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

## DISCUSSION

Count one of the indictment charged Espinoza with engaging in a pattern of racketeering activity ("RICO") in violation of 18 U.S.C. § 1962(c). Count seven charged Espinoza with using and carrying a firearm, specifically an incendiary device, during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1). Section 924(c) provides extra punishment for use of a firearm in committing a crime of violence. Section 924(c)(3) defines "crime of violence" as "an offense that is

a felony and"—

    (A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or

    (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Subsection (A) is colloquially referred to as the "elements clause"; subsection (B) is referred to as the "residual clause."

In Espinoza's case, the "crime of violence" used to support his conviction under § 924(c) was the RICO charge contained in count one. Count one alleged that the QC Bishops, and Espinoza as a member, engaged in a pattern of racketeering activity through nine racketeering acts set forth in the indictment. The indictment specified that racketeering act four, Illinois residential arson and attempted arson, served as the predicate RICO offenses for the § 924(c) count.

Petitioner argues that the Supreme Court's ruling in *Samuel Johnson* invalidates his § 924(c) conviction and sentence. In *Samuel Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague. 135 S.Ct. at 2563. The ACCA increases prison sentences to a minimum of 15 years and a maximum of life for violators that have three or more earlier convictions for a "serious drug offense" or a "violent felony." The ACCA defined "violent felony" as follows:

    any crime punishable by imprisonment for a term exceeding one year . . . that—

    (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or

    (ii)    is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury*

*to another.*

§ 924(e)(2)(B) (emphasis added). The italicized portion was known as the ACCA's residual clause. *Samuel Johnson* held that imposing an increased sentence under the residual clause violated the Constitution's guarantee of due process. 135 S.Ct. at 2563.

Specifically, Espinoza argues that (1) section 924(c)(3)(B) is unconstitutionally vague; (2) a RICO offense is indivisible under *Mathis* and is therefore not a crime of violence under § 924(c)'s elements clause; and (3) even if a RICO offense is divisible under *Mathis*, Espinoza's predicate offenses—residential arson and attempted arson—did not require the jury to find he used, attempted to use or threatened to use physical force against the person or property of another.

The Government argues that Espinoza's Petition fails for three reasons: (1) *Samuel Johnson* does not apply because Espinoza's predicate RICO offenses constituted crimes of violence under § 924(c)'s elements clause, not the residual clause; (2) Espinoza's *Mathis* divisibility claim is untimely; and (3) Petitioner's claims are procedurally defaulted in that Petitioner's challenges were available but never asserted prior to the *Samuel Johnson* decision.

The Court does not address whether Espinoza's claims are procedurally defaulted because even if they are not procedurally defaulted, *Samuel Johnson* does not afford Espinoza relief.

## I.    Preliminary Procedural Considerations

Since the filing of Espinoza's successive § 2255 petition, the Seventh Circuit in *United States v. Cardena*, 842 F.3d 959 (7th Cir. 2016), held that § 924(c)(3)(B) is

unconstitutionally vague under *Samuel Johnson*. This is important for two reasons. First, the *Cardena* decision supports Espinoza's argument that *Samuel Johnson* claims apply to § 924(c) convictions. Second, as the law now stands, an offense can only be a crime of violence for purposes of a § 924(c) conviction under § 924(c)(3)(A). *See United States v. Enoch*, 865 F.3d 575, 578 (7th Cir. 2017) (focusing solely on whether the underlying crime constituted a crime of violence under § 924(c)(3)(A)). Furthermore, the Seventh Circuit has explicitly held that *Samuel Johnson* does not affect sentences under the ACCA's elements clause, *Holt v. United States*, 843 F.3d 720, 722 (7th Cir. 2016), so it can be presumed that *Samuel Johnson* likewise does not affect § 924(c)(3)'s elements clause. Thus, if Espinoza's § 924(c) offense is a crime of violence under § 924(c)(3)(A), his *Samuel Johnson* claim must fail. *See Cardena*, 842 F.3d at 996.

To support his *Samuel Johnson* claim, Espinoza's brief advances arguments based on the Supreme Court's decision in *Mathis v. United States*, 136 S.Ct. 2243 (2016). The Government argues that Espinoza's *Mathis* arguments are untimely because *Mathis* is not a new substantive rule of constitutional law made retroactive by the Supreme Court. The Court disagrees with the Government.

Section 2255(f)(3) creates an exception to the one-year statute of limitations for § 2255 petitions; it allows a fresh year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." To reiterate, *Samuel Johnson* was a new constitutional rule made retroactively applicable to cases on collateral review by *Welch*. The Government is

correct that *Mathis* is not a new rule of constitutional law, and that the Seventh Circuit has held that *Mathis* claims cannot support a valid second or successive collateral attack. *See Holt*, 843 F.3d at 722.

But this case sits in a slightly different posture. The Seventh Circuit authorized "the district court to consider the *Johnson* claim, along with the government's defenses." *Espinoza v. United States*, No. 16-2727 (7th Cir. 2016) (Doc. #1-1). Espinoza advances arguments based on *Mathis* in support of his over-arching *Samuel Johnson* claim. While *Mathis* claims may not be retroactively applied for purposes of a fresh year under § 2255(f)(3), *Mathis* is a substantive decision that does otherwise apply retroactively on collateral review. *Holt*, 843 F.3d at 721. As such, Espinoza's *Mathis* arguments are within the scope of the claims the Seventh Circuit authorized this Court to reach. *See United States v. Pinkney*, No. 16-6600, 2017 WL 2633680, *2-*3 (N.D. Ill. June 19, 2017) (holding that Petitioner could make *Curtis Johnson* arguments because *Curtis Johnson* only becomes an issue because of *Samuel Johnson*'s holding); *see also Dawkins v. United States*, 829 F.3d 549, 550 (7th Cir. 2016) (contemplating Petitioner's request to bring a *Mathis* claim as part of a larger claim under *Samuel Johnson*, but denying said request because his *Samuel Johnson* claim was barred by 28 U.S.C. § 2244(b)(1)).

## II. Whether a Substantive RICO Conviction Under 18 U.S.C. § 1962(c) Constitutes a "Crime of Violence" Under § 924(c)(3)(A)

Espinoza argues that because a RICO conviction is not a conviction of the underlying predicate offenses, and because a RICO conviction does not have an element the use, attempted use or threatened use of physical force against the person or property of another, his conviction does not qualify as a crime of violence under §

924(c)'s elements clause. The Government argues that both arson and attempted arson, as predicate offenses for Espinoza's § 1962(c) RICO conviction, qualify as crimes of violence under the elements clause. As will be shown below, the Government is correct.

### 1. *Mathis* and its Application to Espinoza's Conviction

In determining whether an offense is a "crime of violence" under § 924(c), courts employ either the categorical approach or the modified categorical approach. The Supreme Court in *Mathis v. United States*, 136 S.Ct. 2243 (2016), recently explained when courts must apply the categorical approach and when the modified categorical approach is appropriate.

*Mathis* dealt with the fifteen-year mandatory minimum sentence imposed by the ACCA on certain federal defendants who have three prior convictions for a "violent felony," including three generic offenses: burglary, arson, or extortion. 18 U.S.C. § 924(e). To determine whether a prior conviction is for one of those three generic offenses, courts have consistently applied the categorical approach: "They focus solely on whether the elements of the crime of conviction sufficiently match the elements of" the generic offense, "while ignoring the particular facts of the case." *Mathis*, 136 S.Ct. at 2248. For example,

> [a] crime counts as 'burglary' under the Act if its *elements* are the same as, or narrower than, those of the generic offense. But if the crime of conviction covers any more conduct than the generic offense, then it is not an ACCA 'burglary—even if the defendant's actual conduct (*i.e.*, the facts of the crime) fits within the generic offense's boundaries.

*Id.*

*Mathis* noted that the categorical approach is straightforward to "indivisible"

statutes, *i.e.*, statutes that set out a single set of elements to define a single crime. *Id.* However, some statutes are "divisible" in that "a single statute may list elements in the alternative, and thereby define multiple crimes." *Id.* at 2249. When dealing with "divisible" statutes, the Supreme Court approved the "modified categorical approach" where "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* The court can then compare that crime, as the categorical approach commands, with the relevant generic offense." *Id.*

*Mathis* concerned a third kind of statute: "not one that lists multiple elements disjunctively, but instead one that enumerates various factual means of committing a single element." *Id.* at 2249. At issue was Iowa's burglary statute which reached a broader range of places ("any building, structure, or land, water, or air vehicle") than generic burglary. *See* IOWA CODE § 702.12 (2013). *Mathis* held that "those listed locations [in Iowa's burglary statute] are not alternative elements, going toward the creation of separate crimes. To the contrary, they lay out alternative ways of satisfying a single locational element . . . ." 136 S.Ct. at 2250. *Mathis* held that the ACCA treats these kinds of statutes as it does all others, *i.e.*, the categorical approach applies. *Id.* In other words, *Mathis* concluded that a statute is considered divisible, and therefore subject to the modified categorical approach, *only* if it creates multiple offenses by setting forth alternative elements, not alternative means. *Id.* at 2253-54.

The reasoning in *Mathis* has since been applied to statutes other than the ACCA, including § 924(c). *See United States v. Jackson*, 865 F.3d 946, 952 (7th Cir.

2017) (applying *Mathis* to § 924(c) conviction). Thus, the Court must first determine whether § 1962(c) is indivisible (requiring us to apply the categorical approach) or divisible (allowing us to apply the modified categorical approach).

### 2. Section 1962(c) is Divisible and Therefore Subject to the Modified Categorical Approach

Section 1962(c) provides

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

As such, a conviction under § 1962(c) may rest on participation in an enterprise's affairs "through a pattern of racketeering activity," *or* participation in an enterprise's affairs through "collection of unlawful debt." Section 1962(c) is therefore divisible and the modified categorical approach applies. If a statute with alternatively phrased options contains elements of different crimes, "then the court may and should 'review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction.'" *Enoch*, 865 F.3d at 579-80 (quoting *Mathis*, 136 S.Ct. at 2256). This limited review allows a court to look beyond the statutory definition to a small number of documents to determine to which crime, with which elements, the defendant was convicted. *Id.* at 580.[1]

---

[1] The Supreme Court has instructed that a sentencing court may examine: "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). On the other hand, a "court may not consider police reports, complaint applications, or other sources that do not reflect either the defendant's own admissions or the findings of a judge or jury." *United States v. Ker Yang*, 799 F.3d 750, 753 n.2 (7th Cir. 2015). The permissible documents are sometimes referred to as "*Shephard* documents." *Enoch*, 865 F.3d at 580.

It is undisputed here that Espinoza was charged and found guilty of participation in an enterprise's affairs "through a pattern of racketeering activity." The elements of that violation are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 822 (7th Cir. 2016). Looking at those elements alone, it would appear that a RICO violation under § 1962(c) does not constitute a crime of violence because it does not have an element the use, attempted use or threatened use of physical force against the person or property of another. Espinoza argues that the Court's inquiry ends there.

However, the analysis is not that simple. The Government argues that the Court must consider the underlying predicate offenses to determine whether Espinoza's RICO conviction is a crime of violence. 18 U.S.C. § 1961(1) defines "racketeering activity" to encompass multiple offenses including "any act or threat involving" specified state-law crimes, any "act" indictable under various federal statutes (including sports bribery, embezzlement from pension and welfare funds, mail fraud, forgery or false use of a passport, and illegal gambling businesses), and certain federal "offenses." These are known as RICO "predicates." *RJR Nabisco, Inc. v. European Community*, 136 S.Ct. 2090, 2096 (2016). A predicate offense implicates RICO when it is part of a "pattern of racketeering activity." *Id.* To demonstrate a pattern of racketeering activity under RICO, the Government must prove: (1) two or more predicate acts; (2) that are related; and (3) that involve either a closed period of repeated conduct or present the threat of repetition in the future. *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.3d 1041, 1048 (7th Cir. 1998).

In the Second Circuit, a RICO offense is treated as a crime of violence when at least two of the RICO predicates that are found by the jury to have been committed are themselves crimes of violence. *United States v. Scott*, 681 F.App'x 89, 94 (2d Cir. 2017). The Second Circuit has reasoned that "[b]ecause racketeering offenses hinge on the predicate offenses comprising the pattern of racketeering activity, we look to the predicate offenses to determine whether a crime of violence is charged." *United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 2009), *cert. denied*, 559 U.S. 998 (2010). Thus, "where the government proves (1) the commission of at least two acts of racketeering and (2) at least two of those acts qualify as "crime[s] of violence" under § 924(c), a § 1962 conviction serves as a predicate for a conviction under § 924(c)." *Id.*

The Court agrees with the reasoning of the Second Circuit. Espinoza argues that the predicate offenses are merely *means* of establishing a single element: racketeering activity. If the predicate offenses are merely means, and not elements, then the Court must apply the categorical approach and ignore the underlying predicate offenses. *See Mathis*, 136 S.Ct. at 2253-54. But to prove a substantive RICO offense under § 1962(c), the Government must prove the conduct of an enterprise through a pattern of racketeering activity. A "pattern of racketeering activity" requires proof of at least two acts of racketeering activity. Here, Espinoza's predicate acts were residential arson and attempted arson under Illinois law. In order for a state crime to serve as a predicate act, it must be "chargeable under state law and punishable by imprisonment for more than one year" under 18 U.S.C. § 1961(1)(A).[2]

---

[2] RICO does not require prior conviction of the predicate state law offenses; it requires only that the act be "chargeable"—"that is, that the predicate act be a criminal rather than civil offense." *United States v. Murphy*, 768 F.2d 1518m 1531 (7th Cir. 1985).

"Elements are the constituent parts of a crime's legal definition—*the things the prosecution must prove* to sustain a conviction." *Mathis*, 136 S.Ct. at 2248 (emphasis added). By contrast, means are "various factual ways of committing some component of the offense." *Id.* at 2249.

By way of example, compare a RICO substantive charge under § 1962(c) to a RICO conspiracy charge under § 1962(d). Some courts have held that a RICO conspiracy charge is categorically not a crime of violence under § 924(c)(3)(A). *See United States v. Shumilo*, No. 16-4412, 2016 WL 6302524, *6 (C.D. Cal. Oct. 24, 2016). This is because to prove a RICO conspiracy, the Government must only prove that a conspirator intended to "further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense." *Salinas v. United States*, 522 U.S. 52, 62 (1997). The Supreme Court has made clear that "[t]here is no requirement of some overt act or specific act" in a RICO conspiracy case, and a defendant need not commit the underlying predicate acts of the substantive offense. *Id.* at 63-65.[3]

Courts have applied identical reasoning to hold that other conspiracies do not fall within § 924(c)'s elements clause or the ACCA's elements clause. *See United States v. King*, 979 F.2d 801, 801-03 (10th Cir. 1992) (finding that conspiracy to commit a violent felony was not a violent crime under the ACCA's elements clause because "the crime is complete when the felonious agreement is reached," and thus

---

[3] The Second and Fourth Circuits have held that RICO conspiracy is a crime of violence for § 924(c) purposes, and both Circuits considered the underlying predicate offenses in reaching that conclusion. *See Scott*, 681 F.App'x at 95 (where government proved several RICO predicates, the RICO conspiracy offense is a crime of violence); *United States v. Ayala*, 601 F.3d 256, 266-67 (4th Cir. 2010) (looking to the indictment which charged "a pattern of violent racketeering activities, including murder, kidnapping, and robbery," and concluding that a RICO conspiracy conviction was a crime of violence).

"the elements of the felonious objection of the conspiracy are not subsumed within the elements of the conspiracy charge itself"); *United States v. White*, 571 F.3d 365, 368-69 (4th Cir. 2009), *abrogated on other grounds by Samuel Johnson*, 135 S.Ct. 2551 (finding that because elements of conspiracy under North Carolina law required only an agreement to commit a crime and intent to carry out that agreement, it did not have as an element the use, attempted use, or threatened use of physical force against another person); *United States v. Baires-Reyes*, 191 F.Supp.3d 1046, 1049 (N.D. Cal. 2016) (conspiracy to commit Hobbs Act robbery does not fall within § 924(c)'s elements clause because no overt act is required).

By contrast, in a substantive RICO case under § 1962(c), the Government must prove that the defendant committed at least two underlying predicate acts. Said another way, an underlying predicate offense is subsumed within the elements of a substantive RICO charge.

The Court finds further support for this position in the Seventh Circuit's pattern jury instructions. The pattern instruction for a substantive RICO charge under § 1962(c) states: "The  government need not prove that all the acts described in Count [1] were committed, but you must unanimously agree as to which two or more racketeering acts the defendant committed [or  caused to be committed] in order to find the defendant guilty of that count." PATTERN CRIMINAL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT, COMM. FED. CRIM. JURY INSTR. OF THE SEVENTH CIRCUIT 525 (2012 ed.). They further require unanimity "upon which of the different offenses alleged within a racketeering act the defendant committed" if a particular racketeering act consists of multiple offenses. *Id.* at 526. In fact, in Petitioner's

Amended § 2255 Petition, he indicates that the jury was instructed as follows: "The government need not prove that all the acts described in Count One were committed, but you must unanimously agree as to which two or more racketeering acts the defendant committed or caused to be committed in order to find the defendant guilty of Count One." (Doc. 8 at 4). There is no parallel unanimity requirement in the pattern jury instructions for a RICO conspiracy charge. *Id.* at 528.

The Supreme Court's illustration in *Mathis* is instructive:

> [S]uppose a statute requires use of a "deadly weapon" as an element of a crime and further provides that the use of a "knife, gun, bat, or similar weapon" would all qualify. *See Descamps,* 570 U.S., at ——, 133 S.Ct., at 2289; *Richardson,* 526 U.S., at 817, 119 S.Ct. 1707. Because that kind of list merely specifies diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense—a jury need not find (or a defendant admit) any particular item: A jury could convict even if some jurors "conclude[d] that the defendant used a knife" while others "conclude[d] he used a gun," so long as all agreed that the defendant used a "deadly weapon." *Ibid.*; see *Descamps,* 570 U.S., at ——, 133 S.Ct., at 2288 (describing means, for this reason, as "legally extraneous circumstances"). And similarly, to bring the discussion back to burglary, a statute might—indeed, as soon discussed, Iowa's burglary law does—itemize the various places that crime could occur as disjunctive factual scenarios rather than separate elements, so that a jury need not make any specific findings (or a defendant admissions) on that score.

*Mathis*, 136 S. Ct. at 2249. Unlike the locational element in Iowa's statute and the Supreme Court's deadly weapon example, Espinoza's jury could not just "agree" that he committed two predicate acts, while disagreeing *which* predicate acts he committed. The underlying predicate acts are therefore elements, not means, of a substantive RICO offense. The Court must therefore continue to apply the modified categorical approach to determine which predicate offense(s) the Government proved in support of Espinoza's RICO conviction.

### 3. Whether Arson and Attempted Arson Constitute "Crimes of Violence" for Purposes of § 924(c)(3)(A)

The indictment specified that racketeering act four, residential arson and attempted arson, served as the predicate RICO offenses for Espinoza's § 924(c) count. As there is no further ambiguity about the predicate offenses with which Defendant has been charged, the Court's modified categorical analysis comes to an end. The only remaining question is whether arson and attempted arson under Illinois law satisfy § 924(c)'s elements clause. The Court finds that they do.

As previously stated, under § 924(c)(3)(A), a "crime of violence" means an offense that is a felony and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another". Racketeering act four alleged that Espinoza "did engage in an act of arson, that is, by means of fire and explosive, the defendant did knowingly damage and attempt to damage and destroy real property having a value of $150 or more" located in Moline, Illinois "said structure being the dwelling place of another, without the consent of the owner, in violation of 720 ILCS 5/20-1 and 720 ILCS 5/20-1.2". *Espinoza*, No. 00-cr-40031 (C.D. Ill. 2001) (Doc. 1).

720 ILCS 5/20-1 provides:

(a) A person commits arson when, by means of fire or explosive, he or she knowingly:

(1) Damages any real property, or any personal property having a value of $150 or more, of another without his or her consent; or

(2) With intent to defraud an insurer, damages any property or any personal property having a value of $150 or more.

"A person commits the offense of residential arson when, in the course of

committing an arson, he or she knowingly damages, partially or totally, any building or structure that is the dwelling place of another." 720 ILCS 5/20-1.2. Moreover, "[a] person commits the offense of attempt when, with intent to commit a specific offense, he or she does any act that constitutes a substantial step toward the commission of that offense." 720 ILCS 5/8-4(a). To find a defendant guilty of an attempted crime, a jury need only conclude that (i) the defendant acted with the specific intent to commit the substantive offense, and (ii) the defendant committed any act that constitutes a substantial step toward the commission of that offense. *People v. Smith*, 593 N.E.2d 533, 535 (Ill. 1992).

Notably, Espinoza does not argue that residential arson is not a crime of violence; he only argues that attempted arson is not a crime of violence. The Illinois crime of residential arson is undoubtedly a crime of violence for purposes of § 924(c)(3)(A). It is axiomatic that the knowing causation of damage to another's property by means of fire or an explosive necessarily entails the use of physical force against the property of another.

The Court also finds that attempted arson constitutes a crime of violence for purposes of § 924(c)(3)(A). Espinoza argues that an Illinois attempt offense has only two elements (intent to commit a specific offense and taking a substantial step towards the commission of that offense), neither of which requires the use, attempted use, or threatened use of physical force against the person or property of another. (Doc. 8 at 25-26). But to determine whether an attempt offense constitutes a crime of violence, "a court must examine how state courts have applied the general attempt statute **to the particular crime attempted**." *Morris v. United*, 827 F.3d 696, 697-

98 (7th Cir. 2016) (emphasis added). It is insufficient to look at Illinois' attempt statute in a vacuum without consideration of its application to the crime of attempted arson. A review of relevant case law compels the Court to conclude that attempted arson under Illinois law has an element "the . . . attempted use . . . of physical force against the . . . property of another."[4]

First, when a defendant is charged with attempted arson under Illinois law, the State must prove that the defendant **intended** to damage the involved property by means of fire. *People v. Rincon*, 387 Ill.App.3d 708, 723 (Ill. App. Ct. 2d. Dist. 2008). The Supreme Court has held that "the knowing or intentional application of force" is a "use" of physical force. *United States v. Castleman*, 134 S.Ct. 1405, 1415 (2014). This is because the term "use" "requires active employment" rather "than negligent or merely accidental conduct." *Id.* at 1413. The Seventh Circuit has also held in the analogous setting of 18 U.S.C. § 16(a) that crimes of violence must contain as an element the *intentional* use of force. *United States v. Williams*, 864 F.3d 826, 829 (7th Cir. 2017).

Second, the "attempted use of force" is an element of attempted arson under

---

[4] The Government correctly states that "there is no requirement that a crime explicitly include as an element the use, attempted use, or threatened use of physical force against the person of property of another for it to be considered a 'crime of violence' under the elements clause." (Doc. 11 at 12). *See United States v. Williams*, 864 F.3d 826, 830 (7th Cir. 2017) (federal bank robbery committed "by intimidation" counts as a crime of violence under § 924(c) because the "explicit or implicit threat of violent force is inherent in the intimidation element, and that is what is required by § 924(c)(3)."); *United States v. Duncan*, 833 F.3d 751, 754-55 (7th Cir. 2016) (finding that Indiana's robbery statute, which defined robbery in part as knowingly or intentionally taking property from another person "by putting any person in fear" satisfied the ACCA's elements clause because "fear" in the context of Indiana's robbery statute was "fear of physical injury."); *Hill v. Werlinger*, 695 F.3d 644, 649-50 (7th Cir. 2012) (holding that the first prong of Illinois' battery statute, which requires that the defendant "cause[] bodily harm," satisfies the elements clause under the ACCA).

Illinois law. An Illinois defendant can be convicted of attempted arson only if his acts "exceeded mere preparation" and the defendant actually began "perpetration of arson." *See Rincon*, 387 Ill.App.3d at 725 (defendant "had exceeded mere preparation and begun perpetration of arson" when he was within throwing distance of the truck and had gotten as far as producing sparks while trying to light an incendiary device); *People v. Terrell*, 99 Ill. 2d 427, 433 (Ill. 1984) ("Although it is not necessary that a defendant complete the last proximate act in order to be convicted of attempt, our cases have held that mere preparation is not a substantial step."). In other words, the defendant must have begun perpetration of damaging another's property by means of fire.

The Supreme Court in *Curtis Johnson v. United States*, 559 U.S. 133, 138 (2010), explained that "physical force" "plainly refers to force exerted by and through concrete bodies—distinguishing physical force from . . . intellectual or emotional force." *Cf. United States v. Jenkins*, 849 F.3d 390, 393 (7th Cir. 2017) (kidnapping under 18 U.S.C. § 1201(a) does not satisfy § 924(c)'s elements clause because "holding" can be accomplished without physical force, such as luring a victim into a room and locking the victim inside). Illinois attempted arson requires that one intend "to damage by fire." "Damage" means "[t]o do or cause damage to; to hurt, harm, injure; now commonly to injure (a thing) so as to lessen or destroy its value." OXFORD ENGLISH DICTIONARY ONLINE, OXFORD UNIV. PRESS, http://www.oed.com/view/Entry/47006?rskey=gL0zB7&result=2&isAdvanced=false#eid (accessed October 2, 2017). The Eleventh Circuit has held that attempting to set fire to or **damage** an aircraft constitutes a "crime of violence" under § 924(c)(3)(A)

because each of those actions "necessarily involves the attempted or threatened destruction of" property. *United States v. McGuire*, 706 F.3d 1333, 1337 (11th Cir. 2013); *see Santana v. Holder*, 714 F.3d 140, 144 (2d Cir. 2013) (noting that "fire is a physical force."); *see also Chambers v. United* States, 555 U.S. 122, 128 (2009) (reasoning that "failure to report" is not a "violent felony" under the ACCA because "the crime amounts to a form of inaction, a far cry from the purposeful, violent, and aggressive conduct potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion.") (internal citations omitted). Espinoza has not identified any case in which Illinois' judiciary affirmed an attempted arson conviction that penalized acts that did not involve the attempted use of physical force against the property of another, *i.e.*, the attempted use of fire to damage the property of another.[5]

---

[5] The Court finds support for this conclusion in Judge Hamilton's recent concurring opinion in *Morris v. United States*. Judge Hamilton held that attempted violent felonies should constitute violent crimes for purposes of the ACCA's elements clause. *Morris*, 827 F.3d at 698-99 (7th Cir. 2016) (Hamilton, J. concurring). He reasoned:

> Even though the substantial step(s) may have fallen short of actual or threatened physical force, the criminal has, by definition, attempted to use or threaten physical force because he has attempted to commit a crime that would be violent if completed. That position fits comfortably within the language of the elements clause of the definition. It surely fits within the intended scope of the Armed Career Criminal Act.

> Consider, for example, a person who attempts murder by constructing an explosive device intended to destroy a federal building, or by waiting with a loaded sniper rifle for the intended target of a murder to come within range. Neither crime involves actual use or threats of physical force, but in both the criminal intends to use such force and takes substantial steps toward doing so. That seems to me as if an element of the attempt crime is the attempted use of physical force.

> As for attempted robbery, consider our decision in *United States v. Muratovic*, 719 F.3d 809, 816 (7th Cir. 2013), where the conspirators planned to rob a shipment of illegal drug money. The conspirators planned the robbery

For the foregoing reasons, the Court finds that Petitioner's RICO predicate offenses of Illinois residential arson and attempted arson constitute crimes of violence for purposes of 18 U.S.C. § 924(c)(3)(A).

CONCLUSION

For the reasons stated above, Petitioner's Motion (Doc. 1) and Amended Motion (Doc. 8) Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence are DENIED.

Entered this 3rd day of October, 2017.

s/ Joe B. McDade

JOE BILLY McDADE
United States Senior District Judge

---

carefully, conducted surveillance, and collected weapons, duct tape, and disguises, but did not actually come to the point of threatening the target of the robbery with physical force. We had no difficulty finding a factual basis for the attempt charge. I suspect the Congress that enacted ACCA would have wanted the courts to treat such attempts at violent felonies as violent felonies under the Act.

As a matter of statutory interpretation, an attempt to commit a crime should be treated as an attempt to carry out acts that satisfy *each element of the completed crime*. That's what is required, after all, to prove an attempt offense. If the completed crime has as an element the actual use, attempted use, or threatened use of physical force against the person or property of another, then attempt to commit the crime *necessarily* includes an attempt to use or to threaten use of physical force against the person or property of another. The alternative view would seem to require that we treat as a non-violent felony even a conviction for attempted murder. Imagine the explosive device or waiting sniper described above. Even if the particular attempt involved firing a shot that missed, the alternative view would find no violent felony because violence is not an element of the attempt crime.

*Id.* This reasoning applies with equal force here.